UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

ADAM MATOT,

                Plaintiff,

v.

CH, a minor; BRITTANY FREESE a/k/a
BRITTANY HILL, parent of minor CH;
GARY HILL, parent of minor CH; S.A. a
minor; and DOE 1,

                Defendants.

6:13-cv-153-TC

FINDINGS & RECOMMENDATION

COFFIN, Magistrate Judge:

    Plaintiff brings this action asserting claims for computer fraud and abuse, defamation and negligent supervision. Defendant Gary Hill moves to dismiss asserting lack of subject matter jurisdiction.

    Plaintiff an assistant principal at a middle school in Salem, Oregon, alleges that one or more of the defendants created social media accounts under his name and likeness. Defendants then allegedly invited students to communicate with them under the accounts falsely tied to plaintiff. Plaintiff further alleges that defendants published false and defamatory statements and images about

Page 1 - FINDINGS & RECOMMENDATION

or attributed to plaintiff using the false accounts. Plaintiff alleges that the parents of defendant CH were negligent in their supervision of CH's internet and computer use causing harm to plaintiff.

Plaintiff asserts the court has subject matter jurisdiction based on the Computer Fraud and Abuse Act. Although it is unclear which provision plaintiff relies upon for his claim, the Act prohibits, among other things, access to a protected computer without authorization, or exceeding authorization, with intent to defraud via use of the computer. 18 U.S.C. § 1030(a)(4).[1]

Although a criminal statute, a civil cause of action may be maintained:

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(I). Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages. No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage. No action may be brought under this subsection for the negligent design or manufacture of computer hardware, computer software, or firmware.

18 U.S.C. § 1030(g)

Under 18 U.S.C. § 1030(c)(4)(A)(i)(IV) threats to public health or safety are addressed.

In essence, plaintiff alleges that the actions of CH and the Doe defendants caused harm to plaintiff and to over 70 presumed students who were invited to friend the forged Facebook account attributed to plaintiff, by associating plaintiff (and exposing students to) obscene materials. Plaintiff further contends that such actions impaired plaintiff in his professional capacity and compromised the security of the students at the middle school.

---

[1] Sections 1030(a)(5)(B) and (C) also prohibits intentional access without authorization causing damage, but does not include the exceeding authorized access language prohibited by section 1030(a)(4).

Page 2 - FINDINGS & RECOMMENDATION

While plaintiff alleges that certain defendants created false social media accounts and used protected computers to do so, plaintiff does not allege a direct lack of authorization to use the computers. Plaintiff, rather, asserts "violation of the license under which access is provided." First Amended Complaint (#10) at ¶ 24. In other words, plaintiff alleges that defendants violated the terms of use of social media sites such as www.twitter.com and www.facebook.com.

The Ninth Circuit has analyzed the term "without authorization" in LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1132-35 (9th Cir. 2009). The court held that "a person uses a computer 'without authorization' under §§ 1030(a)(2) and (4) when the person has not received permission to use the computer for any purpose (such as when a hacker accesses someone's computer without any permission), or when the employer has rescinded permission to access the computer and the defendant uses the computer anyway." Id. at 1135. The complaint does not allege that defendants did not have permission to use the social networking computers for any purpose, but rather they used the computers in violation of the license permitting the access, as noted above. Accordingly, plaintiff must rely on the Act's prohibition on "exceeding authorized access." However, because the restriction alleged is regarding the type of use of the social media computers rather than a limitation on access, the Computer Fraud and Abuse Act claim fails in this regard as well.

The Act defines "exceeds authorized access" as accessing "a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled to obtain or alter." 18 U.S.C. § 1030(e)(6). Here, Congress intended (interpreting the Act under the rule of lenity as is necessary for criminal statutes) to target the unauthorized procurement or alteration of information, not its misuse or misappropriation. United States V. Nosal, 676 F.3d 854,
Page 3 - FINDINGS & RECOMMENDATION

863 (9th Cir. 2012).[2] Thus, "exceeds authorized access" in the Act is limited to violations of restrictions on access to information, and not restrictions on its use. Id. at 864. In this case, plaintiff alleges that the access granted to defendants was limited by a prohibition on using social media under false pretense to create accounts under the name and likeness of plaintiff. First Amended Complaint (#10) at ¶¶ 24-26. While plaintiff alleges the access was "unauthorized," access was permitted under a license. The violation of the license is a restriction on use and does not allege a violation of the Act. See Nosal, at 862 (citing a case finding conviction under the Act via violation of social media site's terms of service void for vagueness wherein a mother posed as a 17–year–old boy and cyber-bullied her daughter's classmate in violation of MySpace's prohibition on lying about identifying information). Accordingly, the Computer Fraud and Abuse claim should be dismissed.[3] Once the Computer Fraud and Abuse claim is dismissed, plaintiff has failed to allege any federal cause of action upon which this court may base jurisdiction.

Plaintiff argues that if his Computer Fraud and Abuse Act claim is dismissed, he should be granted leave to amend to add a Racketeer Influenced and Corrupt Organizations Act (RICO) claim. To state a claim under RICO, 18 U.S.C. § 1961 et seq., plaintiff must allege that he has been injured

---

[2]Although Nosal is a criminal case, because the Computer Fraud and Abuse Act has both criminal and civil applications, it is to be interpreted consistently. See Leocal v. Ashcroft, 543 U.S. 1, 11 n. 8, (2004).

[3]Plaintiff's attempt to cast the complaint as one of "hacking" because permission to access Facebook was "arguably" granted to only plaintiff when defendants used his "stolen name and stolen image to create a forged account" (Memorandum in Opposition (#15) at p. 4) is unavailing. Plaintiff does not, and cannot, allege that defendants accessed, without authorization, his Facebook account by stealing, for example his i.d. and password, but rather that they created an account in his name after accessing Facebook in violation of Facebook's license for use. There is no allegation that defendants were not authorized to access Facebook's computers to set up an account that did abide by Facebook's policies.

Page 4 - FINDINGS & RECOMMENDATION

by "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." Jarvis v. Regan, 833 F.2d 149, 151-52 (9th Cir. 1987).

Plaintiff asserts that he can allege the predicate acts of obscenity and wire fraud. It is highly questionable whether the allegedly obscene material (submitted by plaintiff, unsealed, as exhibit 1 to the declaration of counsel (#16)), qualifies as obscene given contemporary standards. In addition, it is difficult to understand how plaintiff could allege wire fraud as a predicate act. To establish the predicate act of mail or wire fraud a plaintiff must allege that defendants engaged in (1) a scheme to defraud (2) to get money or property, (3) furthered by the use of interstate mail or wires. USA Certified Merchants, LLC v. Koebel 262 F.Supp.2d 319, 332 (S.D.N.Y 2003) (quoting United States v. Autuori, 212 F.3d 105, 115 (2nd Cir. 2000)). Plaintiff contends that the intent to defraud was to convey to the public that the Facebook page belonged to plaintiff causing harm, not to obtain any property.

Moreover, Congress did not intend to target the misguided attempts at retribution by juvenile middle school students against an assistant principal in enacting RICO. The legislative history demonstrates that the RICO statute was intended to provide a new weapons for an assault upon organized crime and its economic roots. Congress' statement of findings and purpose in enacting Pub.L. 91–452, 84 Stat. 922 (1970), is set forth in section 1. The statement describes the problem presented by organized crime. Congress declared: "It is the purpose of this Act to seek the eradication of organized crime in the United States ... by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." Id., at 923. Congress emphasized the need to fashion new remedies in order to achieve its objectives. See S.Rep. No. 91–617, p. 76 (1969). "What is needed here ... are new approaches that will deal not only with

Page 5 - FINDINGS & RECOMMENDATION

individuals, but also with the economic base through which those individuals constitute such a serious threat to the economic well-being of the Nation. In short, an attack must be made on their source of economic power itself, and the attack must take place on all available fronts." Id., at 79. The legislative history shows that the economic power of organized crime derived from its huge illegal profits. See Blakey, The RICO Civil Fraud Action in Context: Reflections on Bennett v. Berg, 58 Notre Dame L.Rev. 237, 249–256 (1982). In short, Congress' overriding goal was remove profit from organized crime. Russello v. United States, 464 U.S. 16, 28 (1983). As noted above, this is not a case about a grand scheme to obtain money, it was an attempt to cause harm primarily in a non-monetary way. This is simply not the kind of case envisioned by Congress in providing for a civil cause of action under RICO. Plaintiff's strained effort to assert federal question jurisdiction by resort to RICO should not be allowed via amendment.

Perhaps recognizing that a claim under RICO is implausible, plaintiff also asserts that the proper remedy for defendant in its motion to dismiss is remand for the remaining state law claims. However, this case has not been removed from state court and thus there is nowhere for this court to remand the state law claims. Jurisdiction over the state law claims is based on supplemental jurisdiction with the Computer Fraud and Abuse Act claim which, as noted above, should be dismissed.

When the federal claims are dismissed before trial, it is wholly within the district court's discretion to dismiss the state claims. United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966); see also Schneider v. TRW, Inc., 938 F.2d 986, 993-94 (9th Cir. 1991). The court has not invested its judicial energies to such an extent that would justify retaining jurisdiction. See Schneider, 938 F.2d at 994; Wren v. Sletten Const. Co., 654 F.2d 529, 536 (9th Cir. 1981). Nor is it apparent that

judicial economies would be served by retaining jurisdiction over this case. See Schneider, 938 F.2d at 994. In weighing issues of economy, convenience, fairness, and comity, the court should decline to retain supplemental jurisdiction over the remaining state law claims and this case should be dismissed.

## CONCLUSION

For the reasons stated above, defendant Gary Hill's motion to dismiss (#14) should be granted and this action should be dismissed.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 19 day of August, 2013.

THOMAS M. COFFIN
United States Magistrate Judge

Page 7 - FINDINGS & RECOMMENDATION